IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA.

        Plaintiff,

   vs.                             **CR 08-2702 BB**

HAROLD TIMOTHY GALLAWAY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter came before the court to determine whether to involuntarily medicate Defendant Harold Timothy Gallaway pursuant to the Supreme Court's ruling in *Sell v. United States*, 539 U.S. 166 (2003). Having considered the evaluation of Defendant by Dr. Carlton Pyant and Dr. Kwanna Williamson, having observed and addressed the defendant in open court, and having reviewed the submissions of the parties and the relevant law, this court finds that Defendant is presently incompetent to proceed to trial and orders that Defendant shall be committed to the custody of the Attorney General for involuntary treatment and medication at a suitable facility pursuant to 18 U.S.C. § 4241(d).

## I. Background

On November 18, 2008, the United States charged Defendant with six counts of bank robbery, in violation of 18 U.S.C. §2113(a). Doc. 14. On December 7, 2009, the Court found Defendant mentally incompetent to stand trial and ordered that Defendant be committed to a hospital for further psychiatric treatment and evaluation. Doc. 47. Dr. Carlton Pyant and Dr. Kwanna Williamson evaluated Defendant over a four-month period at a federal medical center in Butner, North Carolina and issued a report on July 15, 2010, concluding that Defendant was

1

incompetent to stand trial.  For. Eval. at 13.[1]  Dr. Pyant and Dr. Williamson opined that it was

substantially probable that Defendant's competency could be restored by treatment with

psychotropic medication.  For. Eval. at 15.  Because Defendant refused to consent to medication,

the doctors requested the Court to consider issuing an order authorizing the involuntary

administration of appropriate medication.  For. Eval. at 15.

On September 9, 2010, the Court conducted an evidentiary hearing to determine whether

Defendant should be hospitalized for an additional period of time and forcibly administered

psychotropic medication to restore him to competency.  Doc. 64.  To date, Defendant refuses to

take medication voluntarily.

## II. Analysis

In *Sell v. United States*, the Supreme Court set forth a four-part inquiry that a district

court must undertake prior to ordering the forcible administration of drugs to restore a

defendant's competency.  539 U.S. at 180-81.  Pursuant to this inquiry, a defendant may be

involuntarily medicated if the court concludes that clear and convincing evidence exists

establishing that: 1) important governmental interests are at stake; 2) involuntary medication will

significantly further those interests; 3) involuntary medication is necessary to further those

interests; and 4) administration of medication is medically appropriate in that it is in the patient's

best interest in light of his medial condition.  *Id.*; *see also United States v. Valenzuela-Puentes*,

479 F.3d 1220, 1223-24 (10th Cir. 2007).

A. *Government Interest*

The United States has significant interests in prosecuting defendants charged with serious

---

[1]Citations to "For. Eval." refer to the July 15, 2010 forensic evaluation of Defendant prepared by Dr. Pyant and Dr. Williamson.

crimes. *Sell*, 539 U.S. at 181. Furthermore, the government has a substantial interest in ensuring

that any prosecution proceeds in a timely fashion because "it may be difficult or impossible to

try a defendant who regains competence after years of commitment during which memories may

fade and evidence may be lost." *Id*. Defendant is charged with six counts of bank robbery.

There can be no doubt that bank robbery, punishable by up to twenty years imprisonment, is a

serious offense. *See United States v. Martinez*, 418 F.3d 1130, 1134 (10th Cir. 2005) (noting

that bank robbery is a serious offense). Given the seriousness of the crime involved, the United

States has an important interest in restoring Defendant to competency so that it may bring him to

trial in a timely manner. Furthermore, there is no evidence of any special circumstances that

would diminish the government's interest. Accordingly, the first factor militates in favor of

forced medication.

  B.  *Likelihood That Medication Will Restore Defendant's Competency*

  Determining whether the forced administration of drugs will significantly further the

government's interests involves a two part analysis. *Valenzuela-Puentes*, 479 F.3d at 1227-28.

First, there must be evidence that "administration of the drugs is substantially likely to render the

defendant competent to stand trial." *Id*. Second, there must be a showing that "administration of

the drugs is substantially unlikely to have side effects that will interfere significantly with the

defendant's ability to assist counsel in conducting a trial defense." *Id*.

  At the hearing, the doctors testified that Defendant suffered from bipolar disorder and

was suffering a manic episode while at FCI Butner. Dr. Williamson further noted that it was

unlikely that Defendant would become stable without the administration of medication. Dr.

Williamson and Dr. Pyant testified that, based on their observations of Defendant, he was not

competent to proceed to trial. Dr. Pyant noted that Defendant was unable to articulate the

3

meaning of concepts, was observed responding to internal stimuli, and presented signs of paranoia and disorganized thinking.  As a result of Defendant's mental impairments, the doctors believed that Defendant could not factually or rationally understand the proceedings against him nor could he effectively assist his attorney in his defense.

Dr. Williamson recommended that Defendant be treated with a neuroatrypical antipsychotic know as Risperdal Consta for a period of no more than four months.  Dr. Williamson testified that this course of treatment was substantially likely to render Defendant competent to stand trial.  Dr. Williamson informed the Court that the side effects associated with this type of drug include tardive dyskinesia, tremors, muscle rigidity, and weight gain.  He advised that these side effects may be managed with additional medications.  While Dr. Williamson could not guarantee that Defendant would not suffer from side effects, he testified that Defendant had a history of being treated with medications similar to Risperdal and had not suffered any side effects previously. Furthermore, Dr. Williamson informed the Court that doctors would closely monitor Defendant for any adverse side effects and could modify his treatment should any profound side effects occur.  Additionally, the doctors opined in their report that their proposed treatment was substantially unlikely to have side effects that would interfere significantly with Defendant's ability to assist his counsel.  For. Eval. at 17.

Based on the information provided by Dr. Williamson and Dr. Pyant, the Court finds that the forced administration of medication is substantially likely to restore Defendant's competency and is substantially unlikely to result in side effects that will interfere profoundly with the Defendant's ability to assist his counsel in defending him.  Accordingly, the second factor favors an order authorizing the forcible administration of medication to Defendant.

C.     *Necessity of Medication to Further Government Interest*

4

The forced administration of drugs is necessary when alternative, less intrusive treatments are unlikely to render a defendant competent to stand trial. *Sell*, 539 U.S. at 181. Dr. Williamson and Dr. Pyant observed in their report that Defendant was not cognizant of his mental illness. For. Eval. at 17. The doctors further opined that Defendant was unable to engage in any form of psycotherapy or psychosocial intervention because of his disorganized and delusional thinking. For. Eval. at 17. As noted previously, Dr. Williamson testified that it was unlikely that Defendant would become stable without the administration of medication. Accordingly, the Court finds that the evidence supports a finding that forcibly medicating Defendant is the only way the government can restore Defendant to competency and is, therefore, necessary to further the government's interests in this case.

> D.     *Defendant's Medical Interests*

Lastly, the Court must determine whether the administration of medication is in Defendant's "best medical interests in light of his medical condition." *Sell*, 539 U.S. at 182. Dr. Pyant and Dr. Williamson reported that the primary treatment for Defendant's mental condition is antipsychotic medication. Rep. at 17-18. This type of medication has a well-documented history of producing beneficial clinical effects in patients with the same psychosis as Defendant. Rep. at 18. The doctors noted that while there were risks associated with taking antipsychotic medications, these risks were manageable and would be monitored closely. Rep. at 18-22. The doctors further noted that the risk associated with not treating Defendant's illness are significant. Rep. at 18. Ultimately, the doctors opined that treatment with an antipsychotic medication could reduce or eliminate Defendant's psychosis and allow him to participate in his own defense. Accordingly, the Court concludes that clear and convincing evidence exists demonstrating that the forced administration of antipsychotic drugs to Defendant is medically appropriate.

**III. Conclusion**

The Court, having evaluated all of the *Sell* factors and concluded that all four weigh in favor a forcibly medicating Defendant, hereby **ORDERS** that Defendant Harold Timothy Gallaway be **COMMITTED** to the custody of the Attorney General for hospitalization and treatment in a suitable facility for a period not to exceed 120 days as authorized under 18 U.S.C. § 4241(d)(1). The Court further **ORDERS** that Defendant may be forcibly treated with antipsychotic medication pursuant to the holding in *Sell v. United States*, 539 U.S. 166 (2003).

_____
HONORABLE BRUCE D. BLACK
CHIEF UNITED STATES DISTRICT JUDGE


Submitted by:

Holland S. Kastrin
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

6